**BANK ST. CROIX, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

**Civ. A. No. 90–2924.**

United States District Court, District of Columbia.

Jan. 30, 1991.

Mary Curtin, Curtin and Barnes, Minneapolis, Minn.

James A. Hourihan, Hogan and Hartson, Washington, D.C., for plaintiff.

Thomas A. Schulz, Asst. Gen. Counsel, Federal Deposit Ins. Corp., Washington, D.C., for defendant.

## MEMORANDUM AND OPINION

REVERCOMB, District Judge.

Plaintiff, Bank St. Croix, Roberts, Wisconsin (the Bank), filed this action in response to a temporary cease and desist order issued by the defendant Federal Deposit Insurance Corporation (FDIC). After a hearing, the Court denied the Bank's application for a temporary restraining order to suspend the effect of the cease and desist order. The Court then ordered that the hearing on the Bank's application for a preliminary injunction be consolidated with a hearing on the merits of the Bank's case. Subsequently, the Bank withdrew its request for a hearing. The Court now considers the parties' cross motions for summary judgment as well as the Bank's application for injunctive relief based on the pleadings.

This case arises from the events surrounding the Bank's application for FDIC approval to open a branch office in Hudson, Wisconsin. The Bank claims that approval was given on September 27, 1990, that the approval was later "withdrawn" on October 31, 1990, and then subsequently denied in a manner that was "statutorily deficient and therefore ineffective and void." Complaint at 7. Upon the advice of counsel, the Bank opened its new branch as planned on November 5, 1990, after receiving notice of the "withdrawal of approval." *Id.* ¶ 17. On November 16, 1990, the Bank received notice that the FDIC had denied its branch application. *Id.* ¶ 20. The same day, the Bank was served with the FDIC's Temporary Order to Cease and Desist pursuant to § 1818(c), Findings of Fact and Conclusions of Law, and a Notice of Charges and of Hearing pursuant to 12 U.S.C. § 1818(b). *Id.* ¶ 21. The Bank now asks this Court to suspend or set aside the temporary cease and desist order pending completion of an administrative hearing and to declare the FDIC's denial of its branch application ineffective and void. *Id.* at 7.

Although requested by the Court to submit a Joint Stipulation of Facts, the parties were apparently unable to reach an agreement as to the undisputed facts. Despite this factual contention, the Court finds that the documents submitted to the record clearly set forth the factual basis underlying this case.

Bank regulatory agencies, such as the FDIC, "are charged with the task of overseeing [the nation's] banking system for the protection of the public and the national economy as a whole, and not for the benefit or protection of individual banking institutions." *First Nat'l Bank of Scotia v. United States*, 530 F.Supp. 162 (D.D.C. 1982). Congress has provided such agencies with a powerful arsenal of regulatory tools, including the power to issue and enforce cease and desist orders. To further enhance these regulatory powers, Congress has restricted the availability and extent of judicial review of such agency orders. Accordingly, although this Court may issue injunctive relief "setting aside, limiting, or suspending the enforcement, operation or effectiveness" of a temporary cease and desist order pending the completion of administrative proceedings, it will do so only when the agency has abused its discretion in issuing the order.

The Bank has raised several arguments concerning the agency's actions in respect to its branch application. The first stems from the manner in which the FDIC approved and then later denied the Bank's application. On September 27, 1990, the Regional Director of the FDIC notified the Bank that its application had been

*approved* subject to the following condition:

That until such time as the branch is established, the Corporation shall have the right to alter, suspend, or withdraw its approval should any interim development be deemed to warrant such action.

Joint Ex. 4. On October 31, 1990, the Regional Director again wrote to the Bank. In the letter, the Regional Director noted that his previous approval of the branch

application had been expressly conditional. The letter went on to state:

> Preliminary results of [an examination of the Bank conducted October 1, 1990] reveal adverse trends in capital, assets, management, and earnings which have left the bank in an unsound condition.

> .    .    .    .    .

> As a result of the bank's deteriorated condition and your inability to fulfill promises of improved conditions made at prior examinations, I am *withdrawing approval* of the branch application and have forwarded to our Washington office a formal *recommendation* for denial of the application based upon the condition of the bank as we now know it. It is fully recognized that this decision will undoubtedly be a difficult one for the bank; however, we feel the present circumstances dictate such an action and, in fact, leave us with no other alternative.

Joint Ex. 5 (emphasis added).

The Bank argues that the original condition imposed in the Regional Director's September 27 approval of its branch application was not authorized by the applicable statute. Thus, the Bank asserts, the FDIC's later withdrawal of its approval and its later denial of the approval were ineffective and void.

■ In approving branch bank applications, the Regional Director is authorized to make the approval conditional. 12 C.F.R. § 303.0(a)(26) lists certain "standard conditions" and permits the Regional Director to impose those conditions, or "variations thereof," on approvals of branch applications. The list includes the following condition:

> That until the conditional commitment of the FDIC becomes effective, the FDIC retains the right to alter, suspend or withdraw its commitment should any interim development be deemed to warrant such action.

Obviously, the condition placed on the Bank's approval in this case is a variation of this "standard condition" and, thus, was properly imposed.

■ Nonetheless, the Bank argues that the condition expressed in the Regional Director's approval is invalid because it rendered the approval too vague and because it authorized the withdrawal of the approval "for any reason whatsoever." Bank's Motion at 9. The Court, however, finds that the condition was neither vague nor overbroad. According to the terms of the condition, the approval could only be withdrawn if interim developments warranted such an action. Here, the Regional Director's letter of October 31 clearly explains the interim developments upon which the FDCI was relying in withdrawing its approval.

■ The Bank also argues that the Regional Director's act in withdrawing his approval was tantamount to denying the Bank's application, an act which both parties agree can only be taken by the Director or an Associate Director of the FDIC. This argument is not supported by the record in this case. In his letter of September 27, the Regional Director stated plainly that he was "withdrawing approval" and that he had "forwarded to [the FDIC's] Washington office a formal recommendation for denial of the application." Thus, the record establishes that the Regional Director did no more than exercise the right he reserved in his original approval to withdraw that approval based on interim developments. Moreover, the letter put the Bank on notice that denial of its application had been recommended.

■ On November 5, 1990, despite having been put on notice of a possible denial of its application, the Bank opened its new branch in Hudson. Subsequently, counsel for the Bank responded to the Regional Director's letter on November 7, 1990, by requesting a reconsideration of the Regional Director's action, which the letter referred to as a "denial" of the application. Joint Ex. 7. In the letter, Bank counsel set forth the position it now asserts to this Court that the "denial" was ineffective.

In a letter dated November 8, 1990, which the Bank received November 16, an Associate Director of the FDIC notified the Bank that its application had been denied.

Because it views the original condition to the FDIC's approval as invalid and the withdrawal of approval ineffective, the Bank does not fully address the effect of this subsequent denial of its application by the FDIC. As the Court has found that the earlier acts by the Regional Director were valid, the only remaining issue as to this denial would appear to be whether it came too late, that is *after* the Bank had been "established." The Bank has not raised such an argument before this Court and nor could it. Essentially, the Bank would have to assert that because the Bank had opened its branch in Hudson prior to its receipt of the denial from the Associate Director, the branch had been "established", and, therefore, the FDIC could not now exercise the condition set out in the original approval.

This type of estoppel argument necessarily must fail; the Bank could not justifiably rely on the FDIC's prior approval of its branch application after that approval had been withdrawn. Once the Bank had notice of the withdrawal of the approval for its branch, it acted at its own peril in deciding to open the branch. Although the Bank has made it clear that its decision to open the branch was made on the advice of counsel, the Bank nonetheless must bear the responsibility for its decision. When it decided to open the branch, the Bank was on notice that the FDIC was concerned with its financial condition and that denial of the application had been recommended by the Regional Director. Accordingly, even if the Bank truly believed that the process by which its application had been handled was flawed, the Bank nonetheless would have to answer to the FDIC concerning its financial situation.

Because the Court has found the FDIC's denial of the Bank's branch application to be both valid and effective, it must also hold that the FDIC did not abuse its discretion in issuing the temporary cease and desist order in this case. The Bank operated its branch in flagrant disregard of the FDIC's denial of the branch application; because the denial of the branch application was supported by the FDIC's concerns

for the Bank's financial condition, the FDIC was justified in issuing a temporary cease and desist order to enjoin the operation of that branch. The Court does not reach the Bank's other arguments concerning the merits of the items listed in the FDIC's Notice of Charges in support of its order. The Bank will have ample opportunity to litigate its case before the administrative proceedings held pursuant to the Federal Deposit Insurance Act.

For the foregoing reasons, the plaintiff's Application for a Preliminary Injunction is DENIED, and the defendant's Motion for Summary Judgment is GRANTED.